UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

JAMES PATRICK COLLITON,

                            Plaintiff,

         - against -

KELLY BUNT, JEFFREY WALRAVEN, and TIMOTHY
MEESTER,

                          Defendants.

_____

No. 15-CV-6580 (CS)

**OPINION & ORDER**

<u>Appearances</u>:

James Patrick Colliton
Poughkeepsie, New York
*Plaintiff Pro Se*

Daniel L. Klein
Goldberg Segalla, LLP
White Plains, New York
*Counsel for Defendant Kelly Bunt*

David L. Posner
McCabe & Mack LLP
Poughkeepsie, New York
*Counsel for Defendants Jeffrey Walraven and Timothy Meester*

<u>Seibel, J.</u>

       Plaintiff James Patrick Colliton, who is proceeding *pro se* in this action, asserts various

claims under 42 U.S.C. § 1983 arising out of the imposition of sex offender treatment as a

condition of his probation.  Defendants are his probation officers, Jeffrey Walraven and Timothy

Meester, and the social worker in charge of his treatment, Kelly Bunt.  Before me are

Defendants' Motions to Dismiss for failure to state a claim.  (Docs. 32, 47.)  For the reasons

stated below, Defendants' Motions are GRANTED.

## I. **Background**

A. Facts

I accept as true the facts (although not the conclusions) as set forth in Plaintiff's Third Amended Complaint ("TAC"). (Doc. 27.)

In 2007, Plaintiff pleaded guilty to various offenses involving prostitution and received a one year sentence. (*See* TAC ¶¶ 1, 3D.) Plaintiff was not subject to parole or probation and was not required to undergo any treatment as a result of his conviction. (*Id.* ¶¶ 1, 3A.) The Dutchess County Department of Social Services ("DSS"), however, ordered Plaintiff to enroll in the Relapse Intervention for Sex Crimes program ("RISC"), run by Family Services, Inc. ("FSI"). (*Id.* ¶ 3A.) Plaintiff refused, and in November 2007 DSS filed a neglect petition and secured an order of protection preventing Plaintiff from having contact with his five children after serving his sentence. (*Id.* ¶¶ 3B-3D.) In 2008, presumably as part of Plaintiff's defense in Family Court, Dr. Dominic Ferro "performed a comprehensive sex offender evaluation of Plaintiff" and concluded that Plaintiff did not require treatment and did not present a risk to children going forward. (*See id.* ¶ 2.) In 2009, DSS prevailed on its neglect petition in Dutchess County Family Court. (*Id.* ¶ 3E.) The Appellate Division reversed in 2010, which allowed Plaintiff to resume contact with his children. (*Id.* ¶¶ 3F-3G.) In 2011, the Court of Appeals affirmed the Appellate Division's reversal, finding that Plaintiff was not obligated to participate in RISC as a result of his 2007 conviction. (*Id.* ¶¶ 3H-3J.)

On February 27, 2014, Plaintiff pleaded guilty in Dutchess County Court for failure to register as a sex offender. (*Id.* ¶¶ 5-6; Plea Tr. 12.)[1] During his allocution, Plaintiff testified that he understood that as part of his plea he was required to undergo a sex offender risk evaluation.

---

[1] "Plea Tr." refers to Plaintiff's January 7, 2014 plea allocution. (Doc. 33 ("Posner Aff.") Ex. B.) As discussed below, I may consider this document in deciding the instant Motions.

(Plea Tr. 12-13.)  At some point before sentencing, Defendant Bunt, who is a Licensed Clinical Social Worker employed by FSI and the clinical supervisor at RISC, examined Plaintiff and recommended to the court that he participate in sex offender treatment.  (TAC ¶¶ 7-11, 18.) Plaintiff had presented Bunt with Dr. Ferro's 2008 report, (*id.* ¶ 4), and encouraged her to review it, but Bunt refused, (*id.* ¶ 10).

On February 27, 2014, the Hon. Peter Forman sentenced Plaintiff to five years of probation, and, relying on Bunt's evaluation, required that he complete a sex offender treatment program.  (*Id.* ¶¶ 6, 13.)  Plaintiff's attorney stated that Plaintiff "understands that he is responsible to completing [sic] that program."  (Sentencing Tr. 3.)[2]  On the same day, the sentencing court imposed Probation Conditions on Plaintiff including:  "You shall undergo a sex offender evaluation and participate in sex offender treatment.  You shall follow all treatment recommendations until successfully discharged in writing as having completed the recommended course of treatment."  (Probation Conditions ¶ 15.)[3]  Another condition required that he find suitable employment, or pursue study or training leading to employment.  (TAC ¶ 26.)

Defendant Walraven was Plaintiff's probation officer from February 27, 2014 through August 18, 2014, after which Defendant Meester took over that role.  (*Id.* ¶¶ 15, 16.)  During the relevant time period, Walraven was Meester's supervisor.  (*See id.* ¶ 17.)  Sometime in April 2014, Walraven instructed Plaintiff to participate in RISC to comply with the Probation Conditions.  (*Id.* ¶ 14.)  Plaintiff requested on multiple occasions that he receive "religious-based treatment" instead of participating in RISC, but Walraven and Meester denied his requests.  (*Id.*

---

[2] "Sentencing Tr." refers to the transcript of Plaintiff's February 27, 2014 sentencing hearing.  (Posner Aff. Ex. C.) As discussed below, I may consider this document in deciding the instant Motions.

[3] "Probation Conditions" refers to Plaintiff's Order and Conditions of Probation dated February 27, 2014.  (Posner Aff. Ex. D.)  As discussed below, I may consider this document in deciding the instant Motions.

¶¶ 15, 37.)  Plaintiff also alleges that Walraven informed him that "he would not be allowed to receive treatment through anyone but RISC."  (*Id.* ¶ 15.)

Walraven, apparently in the belief that Plaintiff was disabled, directed Plaintiff not to seek work and instead to apply for Social Security disability benefits.  (*Id.* ¶¶ 27, 28.)  Walraven explained to Plaintiff that probation officers' "directives" took precedence over his Probation Conditions, and that probation violations could only result from disobeying probation officers' directives rather than from violating Probation Conditions.  (*See id.* ¶ 28.)  Plaintiff alleges that Bunt directed him to obtain employment, despite knowing that Walraven would not allow Plaintiff to obtain employment.  (*Id.* ¶ 35.)

During his probation, Plaintiff sought to "expend essentially his entire day devoted to Prayer and to spending time with his fiancé," and only left the house "to buy groceries or necessary items, and to attend treatment and probation appointments."  (*Id.* ¶ 30.)  Plaintiff alleges that Bunt, Walraven, and Meester discouraged Plaintiff from devoting so much time to prayer, (s*ee id.* ¶¶ 33, 38, 40A), and that Bunt and Meester told him he would be subject to discharge or violation of probation if he did not "engage in more non-religious activities in the community," (*id.* ¶ 40A; *see id.* ¶ 36).  Bunt and Meester often "mocked" Plaintiff's faith, and Meester once stated, "If you're so devoted then why didn't you become a priest?"  (*Id.* ¶¶ 39, 40.)

On August 19, 2015, Plaintiff filed the original complaint in this action.  (Doc. 2.)  On September 2, 2015, Bunt telephoned Plaintiff and advised him that he was discharged from RISC immediately because of the complaint and that such discharge would constitute a violation of his probation.  (TAC ¶ 21.)  Walraven and Meester tried to convince Plaintiff to drop the lawsuit so

that RISC would take him back.  (*Id.* ¶ 22.)  Plaintiff does not allege that he was ever subjected to a probation violation proceeding.

    B.  <u>Procedural History</u>

Plaintiff filed his *pro se* complaint on August 19, 2015, (Doc. 2), and filed a first amended complaint on September 11, 2015, (Doc. 4).  In the first amended complaint, Plaintiff asserted claims against Bunt, Walraven, and Meester, as well as against FSI and some of its employees, the Dutchess County Department of Probation and some of its employees, and the company and employees that administered a polygraph test on Plaintiff.  (*Id.*)  Bunt and the other FSI defendants answered on October 14, 2015.  (Doc. 5.)  On November 5, 2015, pursuant to 28 U.S.C. § 1915(e)(2), the Court dismissed the claims against all defendants for failure to state a claim, except allowed Plaintiff to proceed on his First Amendment claims against Bunt, Walraven, and Meester.  (Doc. 7.)

On January 26, 2016, counsel for Walraven and Meester wrote to the Court seeking a pre-motion conference, arguing that they were entitled to qualified immunity and that Plaintiff's Probation Conditions were generally applicable and thus permissible under the First Amendment's Free Exercise clause.  (Doc. 14.)  The Court held a pre-motion conference on February 9, 2016 and instructed Plaintiff to further amend his complaint to provide more detailed allegations.

Plaintiff filed a second amended complaint on March 10, 2016, asserting claims based on First Amendment retaliation, "imposition of needless treatment," and violation of the Americans with Disabilities Act.  (Doc. 22.)  On March 24, 2016, counsel for Bunt submitted a pre-motion letter arguing that the second amended complaint failed to state a claim as to Plaintiff's added causes of action, and that Bunt was entitled to qualified immunity in any event.  (Doc. 26.)  On

the same day, counsel for Walraven and Meester also filed a pre-motion letter arguing that Plaintiff's new causes of action failed to state a claim, repeating their argument as to Plaintiff's Free Exercise claim and again citing their entitlement to qualified immunity.  (Doc. 25.)  On March 30, 2016, the Court held another pre-motion conference to discuss Defendants' proposed motion to dismiss Plaintiff's second amended complaint.  The Court cautioned that Plaintiff should, among other things, provide further context for his First Amendment retaliation claim and articulate how Defendants' conduct substantially burdened his free exercise of religion.

On May 13, 2016, Plaintiff filed the TAC.  (Doc. 27.)  Construed liberally, the TAC allege causes of action under § 1983 in three categories:  (1) First Amendment retaliation and due process violation against Bunt based on Plaintiff's discharge from RISC after filing the instant action; (2) "Imposition of Needless Treatment" by all Defendants; and (3) religious freedom claims based on Defendants' alleged interference with Plaintiff's prayer.  Bunt, Walraven, and Meester now move to dismiss the TAC in its entirety.  (Docs. 32, 47.)

## III.  Discussion

### A.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

6

will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

B.  Documents Properly Considered

Walraven and Meester attached several documents to their Motion:  (1) the transcript of Plaintiff's January 7, 2014 guilty plea, (Posner Aff. Ex. B); (2) the transcript of Plaintiff's February 27, 2014 sentencing, (*id.* Ex. C); (3) the terms and conditions of Plaintiff's probation, (*id.* Ex. D); and (4) a printout from Google Maps purporting to show the distance from Plaintiff's residence to the location of his treatment, (*id.* Ex. E).  Plaintiff attaches two documents to his opposition brief:  (1) an affidavit addressing factual matter relevant to his Complaint, (Doc. 29

Ex. A), and (2) a September 2, 2015 letter from Bunt to Plaintiff regarding Plaintiff's discharge from RISC, (*id.* Ex. 1).[4]

> When deciding a motion to dismiss, a court is entitled to consider:
>
> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).  To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).  "A document is integral to the complaint where the complaint relies heavily upon its terms and effect.  Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (internal quotation marks and citation omitted).  For the document to form the basis of dismissal, the plaintiff must also have had actual notice of it.  *DeLuca*, 695 F. Supp. 2d at 60 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

"Rule 201 of the Federal Rules of Evidence permits judicial notice of a fact that is 'either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably[] questioned.'"  *U.S. v. Bryant*, 402 F. App'x 543, 545 (2d Cir. 2010) (summary order) (quoting

---

[4] Bunt attached to her Motion a copy of a July 8, 2014 Order of Dismissal in *Rodas v. Family Services, Inc.*, No. 14-CV-3856 (S.D.N.Y.).  (Doc. 49 Ex. B.)  This judicial decision is provided as precedent, not because it relates to the facts of the case.  I consider it only for that purpose, not for the truth of any facts described therein.

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.

1998)).  It is well established that courts may take judicial notice of publicly available documents

on a motion to dismiss.  *See Byrd v. City of N.Y.*, No. 04-CV-1396, 2005 WL 1349876, at *1 (2d

Cir. June 8, 2005) ("[M]aterial that is a matter of public record may be considered in a motion to

dismiss."); *Blue Tree Hotels Inv. (Can.) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369

F.3d 212, 217 (2d Cir. 2004) (courts can "look to public records, including complaints filed in

state court, in deciding a motion to dismiss").  But "[i]n the motion to dismiss context, . . . a

court should generally take judicial notice 'to determine what statements [the documents]

contain[ ] . . . not for the truth of the matters asserted.'"  *Schubert v. City of Rye*, 775 F. Supp. 2d

689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting *Kramer v. Time Warner Inc.*, 937

F.2d 767, 774 (2d Cir. 1991)).  "Because the effect of judicial notice is to deprive a party of the

opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary

evidence, caution must be used in determining that a fact is beyond controversy under Rule

201(b)."  *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70.

    The Court will take judicial notice of the transcript of Plaintiff's guilty plea and the

transcript of Plaintiff's sentencing.  Both are publicly available court documents, the accuracy of

which Plaintiff has not questioned and cannot reasonably question.  The Court will not take

notice of the Google Maps printout, because it is not a public record or otherwise not subject to

reasonable dispute.

    The Probation Conditions imposed by the sentencing court are a public record and are

referred to in and integral to the TAC, so the Court will consider them as part of the pleadings.  I

will also consider the September 2, 2015 letter from Bunt to Plaintiff regarding Plaintiff's

discharge from RISC.  The TAC refers to a telephone conversation regarding Plaintiff's

discharge, and the letter – which Plaintiff obviously received and the authenticity of which no party disputes – states that it confirms that conversation, which is integral to Plaintiff's claims.

Courts ordinarily do not consider factual assertions contained in affidavits submitted in support of or opposition to a motion to dismiss. *See Faulkner v. Beer*, 463 F.3d 130, 134 n.1 (2d Cir. 2006). Moreover, a plaintiff generally may not amend its complaint through its opposition to a motion to dismiss. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).[5] Liberally construing Plaintiff's submission of an affidavit as a request for leave to amend his complaint a fourth time, courts are not required to grant such leave, especially where the plaintiff has already been afforded multiple opportunities to amend the complaint. *See Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 30, 2008) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading."), *aff'd sub. nom*, *Abascal v. Jarkos*, 357 F. App'x 388 (2d Cir. 2009). Here, Plaintiff has already amended three times, twice after Defendants outlined the deficiencies they intended to argue, and this Court made multiple suggestions to Plaintiff at conferences on February 9, 2016 and March 30, 2016 as to how he should better articulate his

---

[5] A court may consider a *pro se* plaintiff's affidavit in opposition to a motion to dismiss. *Aikens v. Royce*, No. 14-CV-663, 2015 WL 7758892, at *4 (S.D.N.Y. Dec. 1, 2015) (collecting cases). And complaints by *pro se* plaintiffs are to be examined with "special solicitude," and interpreted "to raise the strongest arguments that they suggest." *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (internal quotation marks and emphasis omitted). But "the degree of solicitude [afforded a *pro se* litigant] may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). "The ultimate extension of this reasoning is that a lawyer representing himself receives no such solicitude at all." *Id.*; *see Fenner v. City of N.Y.*, No. 08-CV-2355, 2009 WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009) ("It is well settled in the Second Circuit that since the reason for affording *pro se* litigants special deference is not present when the litigant is an attorney, no special consideration is required."). According to Plaintiff, he successfully represented himself *pro se* before the New York Court of Appeals. (TAC ¶ 3I.) This is unsurprising, given that in his affidavit he states that he earned his J.D. from New York University School of Law and practiced at two top New York firms (Simpson Thacher & Bartlett LLP and Cravath, Swaine & Moore LLP). (Doc. 29 Ex. A, ¶ 23.) He may not still be licensed to practice law in New York – the record is unclear – but his training and experience mean he should get little, if any, solicitude. *See United States v. Pierce*, 649 F. App'x 117, 117 n.1 (2d Cir. 2016) (summary order) (disbarred attorney entitled to no special solicitude); *Neroni v. Mayberger*, No. 13-CV-1339, 2015 WL 1413333, at *3 (N.D.N.Y. Mar. 27, 2015) (same); *Moore v. City of N.Y.*, No. 12-CV-4206, 2012 WL 3704679, at *1 (E.D.N.Y. Aug. 27, 2012) (same).

claims. *See George v. Pathways to Hous., Inc.*, No. 10-CV-0505, 2012 WL 2512964, at *7 (S.D.N.Y. June 29, 2012) ("Plaintiff has had two opportunities to amend his complaint pursuant to orders from two federal judges that contained specific directions as to what Plaintiff was required to plead for his claims to survive.").  Further, allowing Plaintiff to effectively amend his complaint a fourth time by way of the attached affidavit would unduly prejudice Defendants, "who have already expended significant time and resources to brief the instant motions to dismiss the [Third] Amended Complaint."  *Id.* at *8; *see Johnson v. City of N.Y.*, 669 F. Supp. 2d 444, 453 (S.D.N.Y. 2009) ("[A]llowing the amendment would be unduly prejudicial to defendants who have already had to refile and rebrief their motion to dismiss once to accommodate [plaintiff's] last amendment.").  I decline to convert the instant Motions to motions for summary judgment because neither party has taken any discovery.  *See Watts v. Jackson Hewitt Tax Serv., Inc.*, 579 F. Supp. 2d 334, 344 n.5 (E.D.N.Y. 2008).

Accordingly, I will not consider the factual assertions contained in Plaintiff's affidavit or opposition brief, and will decide the Motions to Dismiss based on the allegations contained in the TAC.[6]

---

[6] In an August 10, 2016 letter to the Court, (Doc. 40), Plaintiff requested that in the event I decline to consider his affidavit, he be granted leave to file a Fourth Amended Complaint ("FAC").  If Plaintiff wishes to do so, he must – no later than January 13, 2017 – make a formal motion for leave to file yet another amended complaint, addressing: (1) why any additional allegations were not included in any of the previous complaints; (2) why Plaintiff waited until Defendants had briefed the instant motion to add the additional allegations; (3) why Plaintiff failed to heed my advice at each of the previous pre-motion conferences; (4) why Defendants would not be prejudiced by my granting such leave, especially given the time and money spent on the instant motion; and (5) why the FAC would cure the substantive deficiencies noted in this decision.  *See Charles v. Good Samaritan Regional Med. Ctr.*, No. 15-CV-8363, slip op. at 17-18 & n.6 (S.D.N.Y. Oct. 11, 2016).  The motion must also include the proposed FAC.  The memorandum of law in support of the motion must adhere to the Court's requirements for length, spacing, margins and fonts for memoranda of law (which Plaintiff's submissions in opposition to the Motions to Dismiss did not).  Defendants may oppose by January 27, 2017, and Plaintiff may reply by February 10, 2017.

C.  State Action (Bunt)

Bunt argues that as a private citizen she cannot be liable under § 1983.  (Bunt Mem. 4.)[7]

"Because the United States Constitution regulates only the Government, not private parties, a

litigant claiming that his constitutional rights have been violated must first establish that the

challenged conduct constitutes state action."  *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178,

186 (2d Cir. 2005) (internal quotation marks omitted).

> For the purposes of section 1983, the actions of a nominally private entity are attributable
> to the state (1) when the entity acts pursuant to the coercive power of the state or is
> controlled by the state ("the compulsion test"); (2) when the state provides significant
> encouragement to the entity, the entity is a willful participant in joint activity with the
> state, or the entity's functions are entwined with state policies ("the joint action test" or
> "close nexus test"); or (3) when the entity has been delegated a public function by the
> state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (internal quotation marks and alterations

omitted).  The main inquiry under each test is whether the private entity's challenged actions are

"fairly attributable" to the state.  *Id.* (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Plaintiff has failed to establish state action under any of these three tests.

The Court begins "'by identifying the specific conduct of which the plaintiff complains,'

rather than the general characteristics of the entity."  *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v.

Sullivan*, 526 U.S. 40, 51 (1999)).  Here, Plaintiff alleges that Bunt, as an employee of FSI,

(TAC ¶ 18), discharged Plaintiff from RISC in retaliation for his filing of the original complaint

in this action, (s*ee id.* ¶ 21).

First, Plaintiff has failed to plausibly allege that the state exercised its coercive power to

compel Bunt to discharge Plaintiff from RISC.  As discussed below, Plaintiff has failed to allege

that Walraven and Meester were even involved in the discharge, let alone that they (or any other

---

[7] "Bunt Mem." refers to Defendant Kelly Bunt's Memorandum of Law in Support of Motion to Dismiss.  (Doc. 49.)

state actor) compelled Bunt to act.  *See Reinhardt v. Kopcow*, 65 F. Supp. 3d 1164, 1172 (D.

Colo. 2014) (compulsion test not met where plaintiffs "failed to link the decision to terminate

[probationer] from the treatment program to any directive by the Probation Office"); *Rodas v.

Family Servs., Inc.*, No. 14-CV-3856, slip op. at 3-4 (S.D.N.Y. July 8, 2014) ("It cannot be said

that the government is 'responsible for the specific conduct of which the plaintiff complains' –

that is, for terminating his therapy . . . .") (quoting *Fabrikant*, 691 F.3d at 207); *McKendall v.

Tanner*, No. 08-CV-5046, 2009 WL 1811013, at *4 n.20 (E.D. La. June 23, 2009) (plaintiff's

discharge from parole-mandated substance abuse treatment facility was not state action because

facility was private entity).

Second, Plaintiff has failed to allege that Bunt, in providing sex offender treatment to

Plaintiff, was "exercis[ing] powers that are traditionally the exclusive prerogative of the state,"

and thus has not plausibly alleged that the public function test is met.  *Catanzaro v. Harry*, No.

13-1540, 2013 U.S. App. LEXIS 26349, at *10 (6th Cir. Dec. 4, 2013) ("Although incarcerating

prisoners is a function traditionally reserved for the state, providing parolee clients with

counseling and therapeutic services is not.") (citation and internal quotation marks omitted); *see

Reinhardt*, 65 F. Supp. 3d at 1173 (sex offender treatment is not traditional and exclusive state

function); *Rodas v. Family Servs., Inc.*, No. 14-CV-3856, slip op. at 4 (S.D.N.Y. July 8, 2014)

("Providing therapy is also not a public function, that is, a function that has traditionally been the

exclusive prerogative of the State.") (internal quotation marks omitted).

Finally, Plaintiff seems to be arguing that Bunt's conduct satisfies the joint action test,

alleging that "Bunt acted jointly and intentionally with . . . Meester and . . . Walraven, for the

benefit of . . . Meester and . . . Walraven," (TAC ¶ 25), that the three Defendants acted "pursuant

to a customary plan," (*id.* at 8),[8] and that Bunt joined with Walraven and Meester in a conspiracy

to violate his rights, (P's Mem. 9-11).[9]  These conclusions, unsupported by any facts rendering

them plausible, are not sufficient to establish state action by Bunt.  *See Finnan v. Ryan*, 357 F.

App'x 331, 333 (2d Cir. 2009) ("[P]laintiff made only conclusory allegations that these appellees

acted in concert with state officials, which does not suffice to state a § 1983 claim against a

private entity.") (alteration and internal quotation marks omitted).  To plausibly allege such a

conspiracy, Plaintiff would need to show that Walraven and Meester were "jointly engaged as . .

. willful participant[s] in the prohibited action."  *Annunziato v. The Gan, Inc.*, 744 F.2d 244, 250

(2d Cir. 1984).  In other words, Plaintiff would need to plausibly allege that "'the State has so far

insinuated itself into a position of interdependence with the private party that it must be

recognized as a joint participant in the challenged activity.'"  *Carroll v. Blinken*, 42 F.3d 122,

131 (2d Cir. 1994) (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961))

(alterations omitted).  At most, Plaintiff has alleged that Bunt worked with Walraven and

Meester to administer therapy and treatment to probationers like Plaintiff.  That Bunt, Walraven,

and Meester were all part of Plaintiff's treatment "team," (P's Mem. 8), is not enough to

plausibly show that they conspired to dismiss him from RISC.

Likewise, that RISC is "fully dependent upon pleasing the Government," (*id.*), does not

suffice to render joint action plausible.  *See Rendell-Baker*, 457 U.S. at 841 ("[A]cts of . . .

private contractors do not become acts of the government by reason of their significant or even

total engagement in performing public contracts."); *Grogan v. Blooming Grove Volunteer*

*Ambulance Corps*, 768 F.3d 259, 268-69 (2d Cir. 2014) (state funding and regulation of private

---

[8] On page 7 the TAC ceases to use numbered paragraphs, so I will refer to page numbers using "at" instead.

[9] "P's Mem." refers to Memorandum of Law in Opposition to the Defendants' Motion to Dismiss.  (Doc. 29.)

entity is insufficient to support finding of state action). Plaintiff has thus failed to allege state action with respect to any of his claims against Bunt. *See Gross v. Samudio*, 630 F. App'x 772, 778-79 (10th Cir. 2015) (no state action when contractor refused to treat parolee, allegedly in retaliation for his challenge to program's requirements); *Edmond v. Clements*, 896 F. Supp. 2d 960, 965 (D. Colo. 2012) (parolee's treatment provider not a state actor).[10]

Bunt's Motion to Dismiss all claims against her is granted,[11] and I will now address each of Plaintiff's claims with respect to Walraven and Meester.

D. Walraven & Meester

1. *Personal Involvement (First Amendment/Due Process Claim)*

Before Plaintiff may recover on any of his § 1983 claims, he must establish each defendant's personal involvement in the alleged constitutional violation. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted).

---

[10] Even if Bunt were a state actor, she would be entitled to qualified immunity. There is no Second Circuit case law (or at least Plaintiff has not identified any) holding that a treatment professional must keep treating a patient who has sued her. *See Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016) (state actor entitled to "qualified immunity if at the time of the challenged conduct there was no clearly established law that such conduct constituted a constitutional violation") (internal quotation marks omitted).

[11] Plaintiff alleges that Walraven requested that Bunt perform Plaintiff's sex offender assessment as part of the presentence report presented to the sentencing court. (*See* TAC ¶¶ 8, 13.) To the extent that Plaintiff challenges Bunt's presentencing assessment of Plaintiff, she is entitled to quasi-judicial absolute immunity. *See Henderson v. Heffler*, No. 07-CV-487, 2010 WL 2854456, at *3 (W.D.N.Y. July 19, 2010) ("Absolute immunity has been extended to court-appointed social workers, doctors, psychiatrists, and evaluators who conduct activities which are 'inexorably connected with the execution of court procedures and are analogous to judicial action.'") (alteration omitted) (quoting *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998)); *Di Costanzo v. Henriksen*, No. 94-CV-2464, 1995 WL 447766, at *2 (S.D.N.Y. July 28, 1995) (psychologist and doctor absolutely immune for allegedly spurious evaluations provided to court).

Walraven and Meester reasonably construe the first amendment retaliation and due process claims to be asserted against Bunt only, (*see* Walraven & Meester Mem. 6;[12] TAC ¶ 21, at 8), and so do not address these claims in their briefing.  Even if I were to liberally construe the TAC as asserting those claims against Walraven and Meester, Plaintiff fails to plausibly allege their personal involvement in Plaintiff's discharge from RISC.

Plaintiff alleges that when Bunt learned that Plaintiff initiated this action in August 2015, she "telephoned Plaintiff and stated that the Defendants were aware of the Complaint and that because Plaintiff filed the Complaint *she* was immediately discharging Plaintiff from RISC." (TAC ¶ 21 (emphasis added).)  The September 2, 2015 letter notifying Plaintiff of his discharge is on FSI letterhead, signed by Bunt and her supervisor, and merely copied to Meester.  (Doc. 29 Ex. 1.)  It is clear from the TAC's allegations and the discharge letter itself that Bunt, and not Walraven or Meester, discharged Plaintiff from RISC; Plaintiff alleges no facts from which to infer that Walraven or Meester had any involvement.  At most, Plaintiff has alleged that Walraven and Meester were aware of the circumstances giving rise to the challenged conduct, which does not suffice to establish personal involvement.  *See Cox v. Fischer*, No. 11-CV-6647, 2013 WL 6987618, at *3 (S.D.N.Y. Dec. 6, 2013) ("Defendants' knowledge of Plaintiff's woes does not equate to their personal involvement in causing him harm, so they cannot be held liable on the basis of their knowledge alone.").

Plaintiff also does not allege that Walraven and Meester directed Bunt to dismiss Plaintiff from RISC, had the authority to direct her to do so, or were even consulted regarding that decision.  *See Edmond*, 896 F. Supp. 2d at 967 (no personal involvement where plaintiff did "not plead any specific facts about the defendants' actions or responsibilities" with respect to

---

[12] "Walraven & Meester Mem." refers to the Memorandum of Law in Support of Defendants Walraven and Meester's Motion to Dismiss.  (Doc. 35.)

imposition of allegedly unnecessary sex offender treatment as condition of parole).  To the contrary, Plaintiff alleges that Walraven and Meester "tried to persuade Plaintiff to drop this suit so that *RISC* would allow him back."  (TAC ¶ 22 (emphasis added).)  If Walraven or Meester had caused Plaintiff to be discharged from RISC or controlled whether RISC discharged him, presumably they could reinstate him without permission from RISC.  As such, Plaintiff has failed to allege the personal involvement of Walraven and Meester in his allegedly retaliatory discharge from RISC.  Further, Plaintiff has not alleged that he suffered any repercussions from Walraven and Meester as a result of his dismissal from RISC.  To the contrary, he alleges that he was given four other treatment providers from which to choose.  (*Id.* at 14.)  Plaintiff's claims arising out of his discharge from RISC are dismissed against Walraven and Meester for lack of personal involvement and failure to allege injury from their actions.

2.  *"Imposition of Needless Therapy"*

Plaintiff's second cause of action appears to be, at bottom, a challenge to:  (1) Bunt's presentencing assessment of Plaintiff, (2) the sentencing court's imposition of a treatment condition based on that assessment, and (3) Defendants' enforcement of that condition.  (*See id.* at 10-14.)  Plaintiff is not clear as to what constitutional rights these actions violated, but the claim fails for other reasons in any event.

Plaintiff has failed to allege Walraven's or Meester's personal involvement in the first challenged action.  Plaintiff's complaint regarding Bunt's assessment is essentially that she concluded that Plaintiff required treatment without properly taking into account Dr. Ferro's 2008 opinion finding the opposite.  (*See id.* at 12.)  Plaintiff has not plausibly alleged that Walraven or Meester had any role in the assessment beyond merely requesting that Bunt undertake it for the court in advance of sentencing.  (*See id.* ¶ 8.)  In his brief, Plaintiff appears to abandon the

17

second basis, arguing that it was not the sentencing judge's reliance on Bunt's evaluation,[13] but Defendants' enforcement of the probation conditions, that violated his rights.  (P's Mem. 3-4.) Specifically, Plaintiff argues that Walraven and Meester violated his rights because they "requir[ed] continuing needless therapy as punishment."  (*Id.* 4.)  This claim fails because Walraven and Meester are entitled to qualified immunity with respect to their enforcement of the Probation Conditions.

> A state actor charged under § 1983 with violating a plaintiff's constitutional rights is entitled to have the action dismissed on the basis of qualified immunity if at the time of the challenged conduct there was no clearly established law that such conduct constituted a constitutional violation.  And qualified immunity attaches if it was objectively reasonable for [the defendant] to believe that his actions were lawful at the time of the challenged act.

*Myers*, 819 F.3d at 632 (citations and internal quotation marks omitted).  Probation officers may reasonably rely on the legality of court-ordered probation conditions requiring sex offender treatment for sex offenders.  *See Rose v. Goldman*, No. 02-CV-5370, 2011 WL 1130214, at *7-8 (E.D.N.Y. Mar. 24, 2011) (probation officer's ordering of sex offender to undergo treatment was consistent with probation conditions and not prohibited by law); *see also Mullenbach v. Gardner*, No. 10-CV-418, 2012 WL 693040, at *11 (D. Idaho Feb. 9, 2012) ("Even if Plaintiff's constitutional rights were violated by enforcing conditions of probation beyond three years, there is no clearly established right to have a probation officer question the legality of the sentence imposed."); *Malcom v. Wooldridge*, No. 04-CV-3100, 2006 U.S. Dist. LEXIS 48419, at *25 (D. Neb. July 14, 2006) (defendant "has qualified immunity for enforcing the court-ordered conditions of probation, preparing presentence report(s), and otherwise performing his official duties as a probation officer assigned by the court to the plaintiff's case").  In enforcing the

---

[13] Plaintiff perhaps recognized that the sentencing judge is absolutely immune.  *See Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions.").

Probation Conditions by requiring Plaintiff to attend sex offender treatment until successfully discharged, as the court directed, (Probation Conditions ¶ 15), Walraven and Meester were not violating clearly established law.  Likewise, Plaintiff has not pointed to any clearly established law requiring a probation officer to overrule a treatment provider as to whether a probationer requires or has successfully completed treatment.[14]  Plaintiff's allegation that Walraven and Meester enforced the Probation Conditions with punitive or malicious intent does not defeat qualified immunity for this claim, as "[e]vidence concerning the defendant's subjective intent is simply irrelevant to that defense."  *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

Walraven and Meester's enforcement of the Probation Conditions was objectively reasonable and did not violate any clearly established law.  They are thus entitled to qualified immunity and this claim is dismissed against them.

### 3. *Free Exercise*

The First Amendment, made applicable to the states by the Fourteenth Amendment, *Central Rabbinical Congress of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014), forbids the government from "prohibiting the free exercise of" religion.  U.S. Const. amend. I.  "[T]he protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993).  The government may, however, "enact generally applicable laws that happen to burden religious practice."  *Newdow v. Peterson*, 753 F.3d 105, 108 (2d Cir.

---

[14] Plaintiff seems to argue that because the treatment was "needless" in the first place, he should have been "successfully discharged" without undergoing any treatment at all.  (P's Mem. 3.)  But Probation Condition 15 clearly requires Plaintiff to successfully complete sex offender treatment, and it is implausible to read this condition as allowing Plaintiff to determine whether such treatment is necessary or as requiring Walraven and Meester to accept Plaintiff's evaluation of his needs over the sentencing court's or Bunt's.

2014) (citing *Emp't Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 882-90 (1990)).
"[A] law that is neutral and of general applicability need not be justified by a compelling
governmental interest even if the law has the incidental effect of burdening a particular religious
practice." *Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 531.

Plaintiff has failed to show that probation conditions for sex offenders are not neutral or
of general applicability, or that they are designed to interfere with religious observation. He has
merely alleged that Defendants' requirement that he attend treatment and engage in his
community "precluded [him] from devoting all of his time to prayer and religious and family
activities." (TAC at 14.) "It may be true that compliance with those terms burdens [Plaintiff's]
ability to practice his religion, but a burden that stems from an otherwise neutral law of general
applicability does not violate the free exercise clause." *Olmos v. Ryan*, No. 11-CV-344, 2013
WL 3199831, at *17 (D. Ariz. June 24, 2013) (conditions of probation for sex offenders are
neutral and generally applicable).

Even if Plaintiff could show that probation conditions for sex offenders were not
generally applicable, he has failed to allege any substantial burden on his religious freedom.[15]
"A substantial burden exists where the state puts substantial pressure on an adherent to modify
his behavior and to violate his beliefs." *Newdow*, 753 F.3d at 109 (internal quotation marks and
alterations omitted); *see Jolly v. Coughlin*, 76 F.3d 468, 476-77 (2d Cir. 1996).

---

[15] Some Second Circuit decisions have questioned whether a plaintiff asserting a Free Exercise claim "must show at
the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Hollard v. Goord*,
758 F.3d 215, 220 (2d Cir. 2014). The potential concern for this inquiry is that it would "embroil[] courts in 'the
unacceptable business of evaluating the relative merits of differing religious claims.'" *Id.* (quoting *Ford v.
McGinnis*, 352 F.3d 582, 592 (2d Cir. 2003)). In *Newdow*, on the other hand, the Second Circuit affirmed the
district court's dismissal of a Free Exercise claim because the plaintiff had failed to establish a substantial burden on
his religious activity. 753 F.3d at 109-10. The concern articulated in *Hollard* is not present here. I accept that
Plaintiff's beliefs are sincerely held, but find that he has not alleged a burden on those beliefs, let alone a substantial
one. I thus follow *Newdow*'s lead and examine at the outset the burden Plaintiff has alleged.

Plaintiff first argues that Walraven and Meester's mocking of his religious activity "must be deemed a substantial burden since there is simply no reason for it."  (P's Mem. 7.)  Accepting the allegations of Walraven and Meester's mocking behavior as true,[16] Plaintiff has not established that this conduct forced him to choose between violating a tenet of his beliefs or facing consequences at the hands of the state.  *See Jolly*, 76 F.3d at 477 ("The choice here presented by the state – either submitting to the test or adhering to one's beliefs and enduring medical keeplock – itself constitutes a substantial burden.").  While unpleasant, Plaintiff has not alleged that Walraven and Meester's comments forced him to modify his behavior in the least. *See Newdow*, 753 F.3d at 109 ("Appellants face no such stark choice between a basic benefit and a core belief.").

Next, Plaintiff argues that Walraven and Meester's alleged instruction to attend treatment and become involved in the community, and threats of a probation violation, constitute a substantial burden because they subject him to stress and constant worry "that his Prayerful Lifestyle will result in prosecution."  (P's Mem. 7.)  But Plaintiff does not allege that he is unable to practice his religion or that his religion requires him to pray twenty-four hours a day or that other adherents pray to the exclusion of all else.  Nor does he explain why his attendance at treatment and community activities could not come out of the time he spends shopping or being with his fiancé.  *United States v. Myers*, 864 F. Supp. 794, 799 (N.D. Ill. 1994) (enforcement of condition that probationer earn a living "not rendered invalid by its side effect of rendering [probationer's] all-consuming religious endeavors more difficult or even impossible;" while probationer wanted to pursue missionary status on full-time basis, he remained free to practice

---

[16] What Plaintiff describes in conclusory fashion as "mocking" may well be a probation officer's justified skepticism of a probationer who claims he should be excused from his obligations because he must pray at all times (except, apparently, when shopping and spending time with his fiancé).  So I am dubious that Plaintiff has plausibly alleged that Defendants mocked his religious beliefs.

his religion at night and on weekends).  In short, he has not plausibly alleged that his religious observance cannot coexist with his conditions of probation.

Moreover, Plaintiff has not alleged that he was ever forced to choose between continuing to practice his religion and being subjected to a probation violation.  *See Jolly*, 76 F.3d at 477.  In fact, Plaintiff has alleged that he continues to devote "essentially his entire day devoted to Prayer and to spending time with his fiancé" despite the alleged threats that his continuing to do so would result in a probation violation.  (TAC ¶ 30.)  That Plaintiff has not actually changed his behavior or faced probation violation as a result indicates that whatever pressure Walraven and Meester exerted on Plaintiff to spend less time praying did not in fact place a substantial burden on his religious activity.  *See Pollard v. U.S. Parole Comm'n*, No. 15-CV-9131, 2016 WL 4290607, at *13 (S.D.N.Y. Aug. 11, 2016) ("Simply put, [plaintiff] has not identified any aspect of his religious exercise which has in fact been hindered or burdened by the charging capabilities of his location monitor.  Accordingly, that is the end of the matter.") (internal quotation marks omitted).

## III.  Conclusion

For the reasons stated above, Defendants' Motions to Dismiss are GRANTED.  The Clerk of Court is respectfully directed to terminate the pending Motions.  (Docs. 32, 47.)  This case will be closed unless a formal motion to amend is made by January 13, 2017.

**SO ORDERED.**

Dated:  December 27, 2016
          White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

22